SEYFARTH SHAW LLP
Brian P. Long (SBN 232746)
bplong@seyfarth.com
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017-5793
Telephone:    (213) 270-9600
Facsimile:    (213) 270-9601

SEYFARTH SHAW LLP
Michael Afar (SBN 298990)
mafar@seyfarth.com
Michael A. Sigall (SBN 305849)
msigall@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067
Telephone:   (310) 277-7200
Facsimile:    (310) 201-5219

Attorneys for Defendant
HYATT CORPORATION

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

EDWARD NEUBECKER, Individually, and on behalf of other members of the general public similarly situated,

Plaintiff,

v.

HYATT CORPORATION, a Delaware Corporation, and DOES 1 through 10, inclusive,

Defendants.

Case No. **'23 CV 0104 BTM NLS**

**DEFENDANT HYATT CORPORATION'S NOTICE OF REMOVAL**

[San Diego County Superior Court, Case No. 37-2022-00050362-CU-OE-CTL

Complaint Filed:  December 16, 2022
Trial Date:  None Set

91144954v.3

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF, EDWARD NEUBECKER, AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Hyatt Corporation ("Defendant") files this Notice of Removal, pursuant to 28 U.S.C. §§ 1332(c), 1332(d)(2), 1441(a), 1446, and 1453, to effectuate the removal of the above-captioned action from the Superior Court for the County of San Diego to the United States District Court for the Southern District of California.

This Court has original jurisdiction under 28 U.S.C. §§ 1332(c), (d)(2)—the Class Action Fairness Act of 2005 ("CAFA"). Removal is proper for the following reasons:

## I.    BACKGROUND

1.    On December 16, 2022, Plaintiff Edward Neubecker ("Plaintiff") filed a class action and representative action in the Superior Court of California for the County of San Diego, titled "*EDWARD NEUBECKER, Individually, and on behalf of other members of the general public similarly situated, v. HYATT CORPORATION, a Delaware Corporation, and DOES 1-10, inclusive*," Case No. 37-2022-00050362-CU-OE-CTL ("Complaint").

2.    On December 20, 2022, Defendant's registered agent for service of process in California received via process server the Summons; Complaint; Civil Case Cover Sheet; ADR Information Package; and Application for Approval of Complex Litigation Designation. A true and correct copy of the packet received by Defendant is attached hereto as **Exhibit A**.

3.    On January 18, 2023, Defendant filed its Answer to the Complaint in San Diego County Superior Court. A true and correct copy of the Answer filed to the Complaint is attached hereto as **Exhibit B**.

4.    Defendant has not filed or received any other pleadings or papers, other than the pleadings described as Exhibit A and Exhibit B, in this action prior to this Notice of Removal.

DEFENDANT HYATT CORPORATION'S NOTICE OF REMOVAL

91144954v.3

## II.   **TIMELINESS OF REMOVAL**

5.    The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

6.    The service of process which triggers the 30-day period to remove is governed by state law.  *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

7.    This Notice of Removal is timely because it is filed within thirty (30) days of service of the Complaint, by personal service on Defendant's agent for service of process, on December 20, 2022.  Cal. Code Civ. Proc. § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery."); 28 U.S.C. § 1446(b).  Thirty (30) days from the service of the Complaint on Defendant on December 20, 2022 is January 19, 2023.

8.    Plaintiff asserts eight (8) causes of action in his Complaint against Defendant: (1) Violation of Labor Code §§ 226.7 and 512; (2) Violation of Labor Code §§ 510, 1194, and 1197; (3) Violation of Labor Code § 226; (4) Violation of Labor Code § 2802; (5) Violation of Labor Code §§ 201-203; (6) Violation of Labor Code §§ 351 and 353; (7) Violation of Business and Professions Code § 17200, *et seq.*; and (8) Penalties Pursuant to Private Attorneys General Act of 2004.  (Ex. A, Complaint, ¶¶ 20-87.)

9.      The Complaint seeks to certify a class of "approximately Ten Thousand (10,000) nonexempt, California-based current and former employees" of Defendant.  (Ex. A, Complaint, ¶ 14.)

10.     Plaintiff's Eighth Cause of Action is based on an alleged "Violation Business and Professions Code § 17200," specifically the California Unfair Competition Law ("UCL").  (Ex. A, Complaint, ¶¶ 63-76.)  The statute of limitations on Plaintiff's Eighth Cause of Action for UCL is four years.  (*See* Cal. Bus. & Prof. Code § 17208.)

11.     Plaintiff alleges that Defendant violated the UCL, §§ 17200 *et seq.*, on the following grounds:

> Defendants failed and refused to properly pay Plaintiff and all other class members.  Defendants also failed to comply with fundamentally protective California laws including, but not limited to, Labor Code sections 201-203, 226, 226.7, 510, 512, 1194, and 2802, as well as IWC Wage Order 5, or any other applicable Wage Order.

(Ex. A, Complaint, ¶ 68.)  Plaintiff further alleges that "[a]s a direct result of Defendants' unlawful and unfair business acts and practices, Plaintiff and all other class members have been denied wages earned, and have therefore been damaged in an amount to be proven."  (Ex. A, Complaint, ¶ 72.)

12.     Accordingly, for purposes of the calculations in this Notice of Removal, the "relevant time period" starting "four years preceding the filing of this Complaint" is from **December 16, 2018 until the present**.

## III.     CLASS ACTION FAIRNESS ACT ("CAFA") REMOVAL

13.     This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. Section 1332(d)(2).  As set forth below, this action is properly removable, pursuant to 28 U.S.C. Section 1441(a), in that this Court has original jurisdiction over the action, because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the action is a class action in which at least one class member is a citizen of a state different from that of a defendant.  28 U.S.C. §§ 1332(d)(2) & (d)(6).  Furthermore, the number of putative class members is greater

91144954v.3

than 100.  28 U.S.C. § 1332(d)(5)(B); Declaration of Daniel Strittmatter in Support of Defendant's Notice of Removal ("Strittmatter Decl."), ¶ 6; Ex. A, Complaint, ¶ 14.

### A. Plaintiff And Defendant Are Minimally Diverse

14.   CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A).  In the instant case, Plaintiff is a citizen of a state (California) that is different from the state of citizenship of Defendant (which is a citizen of Delaware and Illinois).

### 1. Plaintiff Is A Citizen Of California

15.   For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must … be domiciled in the state").  Residence is *prima facie* evidence of domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes").  Citizenship is determined by the individual's domicile at the time that the lawsuit is filed.  *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

16.   Plaintiff alleges that he resides in the State of California.  (Ex. A, Complaint, ¶ 3; "Plaintiff EDWARD NEUBECKER was and is an individual working in the County of San Diego, State of California.")  Plaintiff's intent to remain domiciled in California is further evident from the fact that he brought his lawsuit against Defendant in San Diego County Superior Court.  Accordingly, Plaintiff is a citizen of California.

4

91144954v.3

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

## 2.    Defendant Is Not A Citizen Of California

17.    Defendant is, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. Section 1332(c)(1).  For purposes of diversity jurisdiction, a corporation is deemed a citizen of the state "by which it has been incorporated" and of the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

18.    Defendant is now, and ever since this action commenced has been, incorporated under the laws of the State of Delaware.  (Declaration of Analisa Padilla in Support of Defendant's Notice of Removal ("Padilla Decl."), ¶ 5.)  Thus, for purposes of diversity jurisdiction, Defendant is a citizen of Delaware.

19.    Further, as shown below, Defendant's principal place of business is, and has been at all times since this action commenced, located in the State of Illinois.  (Padilla Decl., ¶ 6.)  Thus, for purposes of diversity jurisdiction, Defendant is also a citizen of Illinois.

20.    The United States Supreme Court held that when determining a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test.  *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 92-93 (2010).  Under the "nerve center" test, the "principal place of business" means the corporate headquarters where a corporation's high level officers direct, control and coordinate its activities on a day-to-day basis. *Id*. ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities").

21.    Under the "nerve center" test, Illinois emerges as Defendant's principal place of business.  Defendant's corporate headquarters are located in Chicago, Illinois where Defendant's high level officers direct, control, and coordinate Defendant's activities.  (Padilla Decl., ¶ 6.)  Defendant's high level corporate officers maintain offices in Illinois, and many of Defendant's corporate level functions are performed in the Illinois office.  (*Id*.)  Additionally, many of Defendant's executive and administrative

5

91144954v.3

functions, including corporate finance and accounting, are directed from the Chicago, Illinois headquarters. (*Id.*)

22.    Therefore, for purposes of diversity of citizenship, Defendant is, and has been at all times since this action commenced, a citizen of the State of Delaware and the State of Illinois.  28 U.S.C. § 1332(c)(1).  Because Plaintiff is a citizen of California and Defendant is a citizen of Delaware and Illinois, minimal diversity exists for purposes of CAFA.

### 3.    The Citizenship Of Doe Defendants Should Be Disregarded

23.    Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332.  *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant").  Indeed, the presence of "DOE" defendants in this case has no bearing on diversity of citizenship for removal.  Thus, the existence of "DOES 1-50" in the Complaint does not deprive this Court of jurisdiction.  *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal).

### B.    Based On Only Three Out Of the Eight Causes Of Action, The Amount In Controversy Exceeds The Statutory Minimum

24.    CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  28 U.S.C. § 1332(d)(6).  In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages,

DEFENDANT HYATT CORPORATION'S NOTICE OF REMOVAL

91144954v.3

injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40. The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id*. at 42-43 ("if a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

25.    **Preponderance Of The Evidence Standard.** Plaintiff's Complaint does not allege the amount in controversy for the class he purports to represent. Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a **preponderance of the evidence** that the amount in controversy exceeds the statutory minimum. In *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013), the U.S. Supreme Court held that the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard. *Accord Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard").

26.    In 2011, Congress amended the federal removal statute to specify that, where the underlying state practice "permits recovery of damages in excess of the amount demanded . . . removal of the action is proper on the basis of an amount in controversy asserted . . . if the district court finds, by the *preponderance of the evidence*, that the amount in controversy exceeds the amount specified in section 1332(a)." Pub.L. 112–63, December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28 U.S.C. § 1446(c)(2) (emphasis added)); *accord Abrego*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the

7

complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy … we therefore apply the preponderance of the evidence burden of proof to the removing defendant"). The defendant must show that it is "more likely than not" that the jurisdictional threshold is met. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $50,000. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount"); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same).

27.     To satisfy this standard, the "defendants' notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 135 S.Ct. 547, 554 (2014); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases. First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but **only plausible allegations** of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite ... amount'") (emphasis added).

28.     The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see*

8

*also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

29.    It is well-settled that "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

30.    As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino*, 506 F.3d at 702 (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

31.    **The Court Must Assume A 100% Violation Rate Based On Plaintiff's Class-Wide Allegations.**  If a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.  She did not.

*Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at *5 (C.D. Cal.

91144954v.3

Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations … Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform … policies were applied to **all** putative class members reasonable") (emphasis added); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Arreola v. The Finish Line*, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

32. Numerous other District Courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate. *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (where complaint alleged

"FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at \*2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice – or other similar language – and where the plaintiff offers no evidence rebutting this violation rate"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at \*5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Soratorio*, *LLC*, 2017 WL 1520416, at \*3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate.  The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.'  It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d. 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at \*3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

33.    The alleged amount in controversy in this class action, in the aggregate, exceeds $5,000,000.  Plaintiff's Complaint seeks to certify, and seeks relief on behalf of, "approximately Ten Thousand (10,000) nonexempt, California-based current and former employees" of Defendant.  (Ex. A, Complaint, ¶ 14.)  The statute of limitations on Plaintiff's Eighth Cause of Action for UCL is four years.  (*See* Cal. Bus. & Prof. Code §

17208; Ex. A, Complaint, ¶¶ 63-76.)  Given that Plaintiff's Complaint was filed on December 16, 2022, for purposes of the calculations in this Notice of Removal the "relevant time period" is from **December 16, 2018 until the present**.

34.    During the relevant time period identified in the Complaint, Defendant employed approximately 14,029 individuals who were always non-exempt, hourly employees at its properties in California, who worked a total of approximately 1,395,286 workweeks.  (Strittmatter Decl., ¶ 6.)  The average hourly rate of pay for these individuals is approximately $18.91 per hour during the proposed class period.  (*Id*. at ¶ 7.)

35.    Plaintiff seeks to recover, on behalf of himself and the alleged class, unpaid wages and penalties for Defendant's alleged failure to provide meal and rest periods, failure to pay minimum and overtime wages, failure to provide accurate and complete itemized wage statements, unreimbursed business expenses, failure to pay all wages due upon separation, failure to pay all tips owed, unfair business practices, and the Private Attorneys General Act.  (Ex. A, Complaint.)  Plaintiff also seeks attorneys' fees and costs.  (Ex. A, Complaint, Prayer for Relief.)

36.    As set forth below, the alleged amount in controversy implicated by the class-wide allegations exceeds $5,000,000.  **All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission of the truth of the facts alleged and assuming solely for purposes of this Notice of Removal that liability is established.**

37.    The calculations below show that the alleged amount in controversy exceeds $5,000,000, when considering non-exempt employees at Defendant, such as Plaintiff, and when considering just a few of the causes of action alleged in the Complaint.[1]

---

[1]    There five other causes of action that Defendant did not include in its amount in controversy calculation.  If the remaining causes of action were included, the total would have been even greater.

12

### 1.    Meal and Rest Period Claims

38.    Plaintiff seeks payments for alleged denial of or missed or interrupted meal periods and rest periods.  (Ex. A, Complaint, ¶¶ 20-35.)  Plaintiff's Complaint alleges that Defendant's "Rest Period policy and practice does not provide the right for employees to 'leave the premises,' and actually requires the employees to 'remain on the premises for the duration of this rest period' where 'coverage' issues requires as such."  (*Id*. at  ¶ 26.)  Plaintiff's Complaint alleges that Defendant's "Meal and Rest Period policy also assumes that employees have 'waived' the right to legally-compliant Meal or Rest Period, or a Meal or Rest Period premium penalty payment, unless the employees complete a very specific process of formal notification" to Defendant.  (*Id*. at ¶ 27.)  Plaintiff's Complaint alleges that Defendant's "policies and practices preclude 'duty-free' Meal and Rest Periods. These institutional and established practices of Defendants are illegal, in that Plaintiff and all other employees were denied proper and/or timely Meal and Rest Periods"  (*Id*. at ¶ 28.)

39.    Plaintiff's Complaint further alleges that Defendant does not "possess a legal Meal Period policy, and make no attempt to ensure that its employees are either timely or wholly provided Meal. Periods. The employees would often either miss a Meal Period entirely, be provided a short or late Meal Period, or be provided only one Meal Period, even when they were working in excess of 10 hours a day. Additionally, Defendants failed to accurately record its employees' actual start and stop times of Meal Periods, in violation of the IWC Wage Orders. 8 Cal. Code Regs. § 11050 (6)(A)(3)."  (Ex. A, Complaint, ¶ 30.)  Plaintiff's Complaint further alleges that Defendant's "policies and practices preclude 'duty-free' Meal and Rest Periods, in that the employees are required to remain 'On Call' at all times, including during the Meal and Rest Periods, in order to (among other reasons) respond to sudden customer or coworker needs."  (*Id*. ¶ 31.)

40.    For these alleged meal and rest period violations, Plaintiff seeks "one additional hour of pay at their regular rate of pay for all workdays that a Meal or Rest Period was not provided."  (Ex. A, Complaint, ¶ 32.)

DEFENDANT HYATT CORPORATION'S NOTICE OF REMOVAL

91144954v.3

41.     California Labor Code Section 512 provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ."  Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes . . . ."  California Labor Code Section 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods or rest periods.  Case law makes clear that an employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day.  *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

42.     The statute of limitations for recovery for meal or rest period premium pay under California Labor Code section 226.7 pay is three years.  *Murphy v. Kenneth Cole Prods.*, Inc., 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations.").  However, Plaintiff alleges a claim for meal and rest break premiums pay as part of his unfair competition claim under Business and Professions Code section 17200, *et seq*.  (Ex. A, Complaint, ¶ 68.)  Although Defendant contends that meal and rest break premium pay cannot be recovered under Business and Professions Code section 17200 (*Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010)), according to the allegations of Plaintiff's Complaint, the four-year statute of limitations applies for purposes of removal.  Cal. Bus. & Prof. Code § 17208.  Thus, for determining the amount in controversy, the four-year statute of limitations applies.

43.     Plaintiff is silent as to the amount of alleged meal periods or rest periods he claims to have been denied, thereby precluding precise estimates of the amount in controversy.  Because Plaintiff alleges that Defendant had a "policy and practice" of not providing the putative class with all meal periods and rest periods (Ex. A, Complaint,

14

¶¶ 26, 27, 29-30), the Complaint contemplates a 100% violation rate for the meal period and rest period claims. Accordingly, a 100% violation rate can properly be assumed for purposes of calculating the amount in controversy of Plaintiff's meal and rest period claims. *See Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc.*, 482 U.S. at 392 (finding a 100 percent violation rate appropriate when "plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%").

44.    While Defendant is entitled to assume a 100 percent violation rate (*i.e.*, five missed meal periods and five missed rest periods per workweek) based on the allegations in the Complaint, Defendant will conservatively assume that putative class members were not provided **just one meal period or one rest period every two weeks**. Where Plaintiff has alleged a policy and practice of meal and rest period violations, it is reasonable to assume that there at least one meal period **or** one rest period violation each week for every employee. Indeed, district courts have consistently upheld even higher assumptions of meal period and rest period violations as plausible for purposes of determining the amount in controversy. *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding an estimate of five meal period and three rest break violations per week reasonable where Plaintiff alleged a "a policy and practice" of meal and rest break violations); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) ("Defendant conservatively assumed the putative class members were not provided … three of ten rest periods they were entitled to receive each work week, even though assumption of a 100 percent violation rate may have been reasonable based on allegations in the Complaint. The Court therefore we finds Defendant's assumed violation rates reasonable"); *Agredano v. Sw. Water Co.*, 2017 WL 2985395, at *6 (C.D. Cal. May 30, 2017) ("Plaintiff further alleges that Defendants 'routinely' and 'consistently' failed to provide him and the putative class members with the required 30–minute lunch break periods. Plaintiff does not limit the number of violations alleged in his Complaint, nor has he offered any evidence that he or other putative class members missed fewer than

91144954v.3

five legally required meal breaks per week. Thus, the Court finds that 'Plaintiff's own complaint alleges universal violations of meal ... period laws' such that Defendants' 'use of a 100% violation rate [five missed meal periods] is proper.'"); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (finding an estimate of five missed rest periods a week reasonable where plaintiff alleged that defendant maintained "policies, practices and procedures that caused the purported violations. . ."); *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at *2 (C.D. Cal. May 14, 2015) (finding defendant's estimate of five meal period and five rest period violations was reasonable); *Coleman v. Estes Express Lines*, Inc., 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate," i.e., 5 missed meal periods and five missed rest breaks per week). *Accord Arias*, 936 F.3d at 926 (holding that "Marriott's assumptions are plausible" where it assumed "one missed rest break" as the "lowest assumed violation rate").

45.    As stated above, during the relevant time period identified in the Complaint, Defendant employed approximately 14,029 individuals who were always non-exempt, hourly employees in California, who worked a total of approximately 1,395,286 workweeks.  (Strittmatter Decl., ¶ 6.)  The average hourly rate of pay for these individuals is approximately $18.91 per hour during the proposed class period.  (*Id*. at ¶ 7.)

46.    Although Defendant denies that Plaintiff (or any putative class member) is entitled to any meal or rest period premium payments, assuming **just one meal period violation or one rest period violation every two weeks** for each putative class member, the amount in controversy would be approximately $13,192,429.10 [(1,395,286 workweeks/2) * ($18.91 per hour) * (1 premium payment every two weeks)]. Accordingly, the amount in controversy on Plaintiff's meal and rest period claims is approximately **$13,192,429.10**.

DEFENDANT HYATT CORPORATION'S NOTICE OF REMOVAL

91144954v.3

### 2. Waiting Time Penalties

47.     Plaintiff's Complaint also alleges that Defendant failed to timely pay wages due, in violation of California Labor Code § 203.  Plaintiff alleges that Defendant "failed (and continue to fail) to provide all wages due and owing to Plaintiff and other class members throughout the course of their employment.  As a direct result of this failure, Plaintiff and all other class members who were discharged or quit were denied all wages due and owing when they received their final paychecks."  (Ex. A, Complaint, ¶ 54.)

48.     On these grounds, Plaintiff seeks "waiting time penalties" under California Labor Code § 203.  (Ex. A, Complaint, ¶ 55.)  Under California Labor Code § 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay.  *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

49.     The statute of limitations period for California Labor Code § 203 penalties extends back only three years from the date of filing of the complaint, or December 18, 2019.  *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010) ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, under Code of Civil Procedure section 338, subdivision (a) (Stats.1935, ch. 581, § 1, p. 1673), three years to sue for the unpaid final wages giving rise to the penalty").

50.     It is also reasonable to assume that each employee waited over 30 days for payment of any allegedly unpaid wages.  *See Tajonar v. Echosphere*, LLC, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant-employer's assumption that each employee was entitled to the maximum thirty-day penalty); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations").

17

91144954v.3

51.    During the relevant three-year time period for waiting time penalties, from **December 16, 2019 to the present**, there were a total of approximately 5,743 individuals who were always non-exempt, hourly employees who were terminated from employment with Defendant in California.  (Strittmatter Decl., ¶ 8.)

52.    Although Defendant disputes liability, the amount in controversy for waiting time penalties is **$26,064,031.20** [$18.91/hour * 8 hours/day * 30 days * 5,743 former hourly employees].

### 3.    Overtime

53.    Plaintiff seeks recovery for "compensation due, including unpaid overtime." (Ex. A, Complaint, ¶ 38.)

54.    Plaintiffs allege that Defendant's "failure to maintain accurate Time Records (as required by California law), to the detriment of the employee.  Specifically, although Defendants would receive 'to-the-minute' start and end times (from its employees required actions), Defendants would thereafter alter - and deduct time from - the Time Records, prior to payment of compensation to the employees.  Additionally, the right to receive the proper minimum wage and overtime compensation was impacted by Defendants knowingly failing to consider other work performed by the employees, including work confirmed by electronic transmissions and alarm records.  Finally, Defendants' failed to keep accurate time records which reflected when its employees were actually working or were under Defendants' control." (Ex. A, Complaint, ¶ 39.)

55.    Plaintiff also alleges that Defendant "had several policies and practices which required employees to work in excess of 8 hours, without receiving all overtime (and/or double-time) compensation."  (Ex. A, Complaint, ¶ 40.)

56.    The statute of limitations for recovery for unpaid wages under California Labor Code §§ 510 and 1194 pay is three years.  Cal. Civ. Proc. Code § 338.  The limitations period is extended to four years when a plaintiff also seeks restitution for the Labor Code violations.  *Falk v. Children's Hosp. Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 (2015) (holding that "actions for restitution and under Business and

Professions Code section 17200 are subject to a four-year statute of limitation").
Accordingly, the proposed class period for this cause of action is from **December 16,
2018 until the present**.

57.    During the relevant time period identified in the Complaint, Defendant
employed approximately 14,029 individuals who were always non-exempt, hourly
employees in California, who worked a total of approximately 1,395,286 workweeks.
(Strittmatter Decl., ¶ 6.)  The average hourly rate is $18.91 per hour.  (*Id.* at ¶ 7.)

58.    Accordingly, the amount in controversy for Plaintiff's unpaid overtime
claim, at just 1 minute of unpaid overtime each week, is **$791,545.75** [($18.91/hour x 1.5
(overtime premium) x .02 (1 minute per week) x 1,395,286 workweeks)].

59.    Although Defendant denies Plaintiff's allegations, these are very
conservative estimations for purposes of calculating the amount in controversy under
CAFA removal.  Indeed, the Ninth Circuit and numerous district courts have held, an
estimate of at least 30 minutes per class member per week (*i.e.*, thirty times Defendant's
assumption) is appropriate in light of Plaintiff's allegations.  *See, e.g.*, *Arias*, 936 F.3d at
927 (holding that "Marriott's assumptions are plausible" where it assumed "30 minutes of
unpaid overtime per week"); *Gant v. ALDI, Inc.*, 2020 WL 1329909, at *5 (C.D. Cal.
March 20, 2020) ("For the unpaid overtime claim, Defendants used a violation rate of one
hour of unpaid overtime per week. This assumption is reasonable in light of the
Complaint, whose allegations lack specificity"); *Wheatley*, 2019 WL 688209, at *5 (C.D.
Cal. Feb. 19, 2019) (finding an estimate of one hour per class member per week
appropriate where Plaintiff alleged a "a pattern and practice" of overtime violations);
*Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7,
2017) (denying motion to remand where, "[f]or the at-controversy overtime wages,
[defendant] assumes that each of the class members worked two hours of overtime each
week during the class period"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032,
1042 (N.D. Cal. 2014) (finding appropriate the assumption that each class member is
owed one hour of overtime compensation per week where the complaint alleged overtime

DEFENDANT HYATT CORPORATION'S NOTICE OF REMOVAL

91144954v.3

violations occurred "regularly"); *Oda v. Gucci Am. Inc.*, 2015 WL 93335 at *4 (C.D. Cal. Jan. 7, 2015) (finding reasonable an assumed violation rate of one hour of overtime per week where the plaintiffs' asserted the defendant "sometimes" failed to pay overtime); *Ray v. Wells Fargo Bank*, N.A., 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (finding reasonable the defendant's estimate of one hour of unpaid overtime per week for each class member where the complaint alleged "consistent" unpaid overtime work).

### 4.    Approximate Aggregate Amount In Controversy

60.    Although Defendant denies Plaintiff's allegations that he or the putative class are entitled to any relief for the above-mentioned claims, based on the forgoing calculations, the aggregate amount in controversy for the putative class for all asserted claims, exclusive of attorneys' fees, is approximately **$40,048,006.05**, calculated as follows:

· **$13,192,429.10**        Meal/Rest Period Claim (Assuming Just 1 Missed Meal Period Or 1 Missed Rest Period Evert Two Weeks)

· **$26,064,031.20**        Waiting Time Penalties

· **$791,545.75**        Overtime (Assuming just one minute of unpaid overtime per week)

61.    The figures above do not take into account Plaintiff's claims for unpaid minimum wages, wage statements, unreimbursed business expenses, or attorneys' fees and costs.

### 5.    Attorneys' Fees

62.    Plaintiff also seeks attorneys' fees.  (Ex. A, Complaint, Prayer for Relief.) Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff

91144954v.3

1    to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to

2    resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to

3    the amount in controversy").

4        63.    A reasonable estimate of fees likely to be recovered may be used in

5    calculating the amount in controversy.  *Longmire v. HMS Host USA, Inc.*, 2012 WL

6    5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable

7    estimates of attorneys' fees likely to be incurred when analyzing disputes over the

8    amount in controversy under CAFA.") (*citing Brady*, 243 F. Supp. 2d at 1010-11);

9    *Muniz*, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in determining

10    amount in controversy).

11        64.    In a recent decision, the Ninth Circuit held that "a court must include future

12    attorneys' fees recoverable by statute or contract when assessing whether the amount-in-

13    controversy requirement is met."  *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d

14    785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-

15    15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior

16    to removal—for example, it is not limited to wages a plaintiff-employee would have

17    earned before removal (as opposed to after removal).  Rather, the amount in controversy

18    is determined by the complaint operative at the time of removal and encompasses all

19    relief a court may grant on that complaint if the plaintiff is victorious."); *Lucas v.

20    Michael Kors (USA), Inc.*, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (holding that

21    "unaccrued post-removal attorneys' fees can be factored into the amount in controversy"

22    for CAFA jurisdiction).

23        65.    Indeed, the Ninth Circuit again very recently explicitly confirmed that

24    "when a statute or contract provides for the recovery of attorneys' fees, prospective

25    attorneys' fees must be included in the assessment of the amount in controversy,"

26    including in the context of determining CAFA jurisdiction and as a "principle[] that

27    appl[ies] in CAFA removal cases."  *Arias*, 936 F. 3d at 922.

28

DEFENDANT HYATT CORPORATION'S NOTICE OF REMOVAL

91144954v.3

66.    In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted.  *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78-84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at *16-18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund).  Even under the conservative benchmark of 25 percent of the total amount in controversy for Plaintiff's claims, attorneys' fees alone would be upward of **$10,012,001.51** in this case [$40,048,006.05 amount in controversy * 0.25].

67.    Although Defendant denies Plaintiff's allegations that he or the putative class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, and a conservative estimate based on those allegations, the total amount in controversy is at least **$50,060,007.56**, including attorneys' fees.  This total amount in controversy far

91144954v.3

exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

68.    Accordingly, because diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2).  This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. section 1441(a).

69.    To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

## IV.    VENUE

70.    Venue lies in the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(d).  This action originally was brought in San Diego County Superior Court of the State of California, which is located within the Southern District of California.  28 U.S.C. § 84(d).  Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

71.    A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the San Diego County Superior Court of the State of California as required under 28 U.S.C. § 1446(d).

## V.    NOTICE TO STATE COURT AND TO PLAINTIFF

72.    Defendant will give prompt notice of the filing of this Notice of Removal to Plaintiff and to the Clerk of the Superior Court of the State of California in the County of San Diego.  The Notice of Removal is concurrently being served on all parties.

## VI.    PRAYER FOR REMOVAL

73.    WHEREFORE, Defendant prays that this civil action be removed from Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California.

91144954v.3

1  DATED: January 19, 2023                    Respectfully submitted,

2                                             SEYFARTH SHAW LLP

3
                                              By: */s/ Michael Afar*
4                                                  Brian Long
                                                   Michael Afar
5                                                  Michael A. Sigall
                                              Attorneys for Defendant
6                                             HYATT CORPORATION

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

DEFENDANT HYATT CORPORATION'S NOTICE OF REMOVAL